† YORK & CUMBERLAND RAILROAD COMPANY *versus* PRATT.

By c. 369, § 5, of special laws of 1846, delinquent subscribers or stockholders in the York & Cumberland Railroad Company were made accountable for the balance, if their shares should sell for less than the assessments due thereon, with the interest and cost of sale.

By an additional Act of June 21, 1848, the capital stock was to consist of not less than four thousand shares.

The defendant subscribed for two shares in the capital stock of the plaintiff corporation on certain conditions named therein, none of which had reference to the number of shares subscribed for, and paid three assessments thereon; afterwards more assessments were made, their payment by him refused, and the shares were sold in accordance with the charter and by-laws for a less sum than the amount assessed: — *Held*, that defendant was liable for the balance, although the minimum number of shares had not been subscribed for.

A stockholder in a corporation has no such interest as to prevent him from testifying to his official acts in such company.

ON REPORT from *Nisi Prius*, HOWARD, J., presiding.

ASSUMPSIT, to recover the balance due on two shares of the stock of the Y. & C. Railroad Company, subscribed for by defendant, after their sale at auction for alleged non-payment of assessments thereon, and the cost of sale. The general issue was pleaded.

It was in evidence that defendant appended his name for two shares, to a paper of the following tenor: —

"The subscribers hereby agree to take and fill the number of shares in the stock of the York and Cumberland Railroad Company, set against their names respectively, on the terms and conditions following, viz: —

"1st. The advance payment on each share shall be one dollar.

"2d. The shares shall not be assessed more than five dollars each, payable at one time, nor to a greater amount in all, than fifty dollars, including the advance of one dollar.

"3d. Whenever the whole amount of fifty dollars shall be assessed, and the road put in operation for the whole or any part of its distance, the holder of stock upon which the assessments shall have been paid in full, shall receive interest

at the rate of six per cent, on the sums paid on his or her share or shares, computed from the days of payment up to the time the last assessment shall become due and payable. If any stockholder shall be delinquent, after said time, interest shall be charged on his assessment from said time till payment.

4th. "Whenever the directors shall call for any assessment, every stockholder shall be at liberty to pay such sum over and above the amount actually assessed, as he or she may see fit to pay, not exceeding fifty dollars on each share, and interest shall be allowed and paid thereon, as provided in the third regulation.

"5th. If the whole number of shares subscribed for, shall exceed eight thousand, such excess shall be disposed of by reducing *pro rata* the subscriptions which are over twenty-five shares, without making fractions in the apportionment of the excess."

By the stockholders' record of July 20, 1848, it appeared that the corporation accepted of an additional Act to establish the company, excepting the second section thereof. At that meeting a code of by-laws was accepted, the thirteenth of which was as follows:—

"The president and directors may, from time to time make such equal assessments on all the shares in said corporation, as they may deem expedient and necessary for the purposes of the company; and may direct the same to be paid to the treasurer, at such time and place as they shall deem proper, governing themselves as to the amount of assessments, the allowance of interest, and in all other respects, by the terms, conditions and regulations prescribed by the persons having charge of the original subscription books for stock, before the opening of said books; and the treasurer shall give notice of the amount per share of every such assessment, and of the time and place, when and where the same will be due and payable, by advertisements, to be printed in one or more newspapers to be printed in Portland and Saco, at least thirty days before the day fixed for

payment thereof. And if any stockholder shall neglect or refuse to pay any assessment or assessments on his share or shares in said company, for the space of thirty days after the first publication of such notice, the directors may order the treasurer, after giving notice, (as hereinafter provided,) of the sale, to sell any or all such shares, by public auction, to be held in said Portland, to the highest bidder; and the same shall accordingly be transferred by the treasurer to the purchaser; who shall be entitled to receive a certificate thereof. And notice of every such sale shall be given by the treasurer, in one or more newspapers, printed in Portland, at least thirty days before the day of such sale, designating the time and place thereof, and the shares to be sold."

The officers of the company produced their books, by which it appeared that several assessments upon the shares had been made in accordance with the regulations thereof. Four of these assessments had been paid by defendant on the two shares by him subscribed for.

The balance of the assessments, to fifteen in the whole, the defendant had not paid. These assessments were duly advertised, and amounted in all to fifty dollars per share, the par value thereof.

By the directors' records of Sept. 13, 1853, the following vote was passed, and the defendant's name attached with his residence and his number of shares:—

"*Voted,* That whereas the persons named in the following list, holding the number of shares set against their names respectively, have neglected or refused to pay the assessments due thereon, the treasurer is hereby ordered, authorized and directed to sell all such shares at auction, to the highest bidder, at the office of Wm. D. Little, in the city of Portland, on Saturday the 22d day of October, A. D., 1853, at 10 o'clock, A. M., for the non-payment of the assessments due thereon."

The treasurer advertised, according to the by-laws, on Sept. 23, 1853, the sale of the following shares of the capi-

tal stock of the railroad corporation, on Oct. 22, following, for·the payment of assessments due thereon, and the interest and cost of sale, which stood on the books of the company in the names of the following persons (giving the defendant's name, residence and number of shares, with other delinquents.) ·

At the time appointed, these shares, with others, were sold at public auction for $12 per share, and certificates given to the purchaser.

No shares were *numbered* as belonging to defendant, and none were so done until fully paid for.

Toppan Robie was called as a witness, who was a stockholder, and was admitted against the objections of defendant. He testified to certain official acts he did as treasurer of the company. He prepared the assessment book; the first payment of one dollar per share, voted by directors, was called by him the first assessment, although it was intended the advance payment named in the subscription. He gave due notice of the assessments according to the by-laws.

Upon the evidence, if the plaintiffs were entitled in law to recover, a default to be entered; otherwise, the plaintiffs to become nonsuit.

*J. Pierce,* for plaintiffs.

I. The defendant, by his subscription and by his subsequent admissions thereof, by payments in pursuance of it, and other participation in the business of the ·company, became liable as a "subscriber" to pay the plaintiffs, as alleged in the writ, fifty dollars per share upon the shares he subscribed for; and having neglected to do so, to pay to them the balance due on said shares after their sale by the plaintiffs, on account of said neglect, with costs of sale and interest, according to the law established and stated,—

1. As to the meaning of the words "take and fill," in his subscription, in the case of *Bangor Bridge Co.* v. *McMahon,* 10 Maine, 478.

2. As to the validity of the contract between him and the plaintiffs, in the cases of *Kennebec & Portland R. R.*

*Co.* v. *Jarvis*, 34 Maine, 360; *same* v. *Palmer*, 34 Maine, 366.

3.   As to his admissions in recognition of the contract, in Greenl. on Ev., vol. 2, § 444; *South Meadow Dam Co.* v. *Gray*, 30 Maine, 547.

4.   As to his said liability as such subscriber, in c. 369, § 5, of Special Laws of Maine, of the year 1846, being the Act of incorporation of said Company, approved July 30, 1846; and case of *Lexington & W. Cambridge R. R. Co.* v. *Chandler*, 13 Met. 314.

II.   The witnesses were competent.   Greenl. on Ev., vol. 1, § § 411, 416; *Wiggin* v. *Lowell*, 8 Met. 301; Angel & Ames on Cor., § § 653, 655, 656.

*O'Donnell*, for defendant.

TENNEY, J. — The Act creating the York & Cumberland Railroad Company, was passed July 30, 1846, and an additional Act was passed June 21, 1848.

In the spring of 1848, the defendant put his signature to a subscription book, on which were the names of the subscribers, in the hands of an agent of the company, authorized to obtain subscriptions for its stock, preceded by the printed charter; and also a paper containing the terms of subscription, by which he agreed " to take and fill" two shares on the terms and conditions, specified in that paper.

At a meeting of the stockholders, on July 20, 1848, the 13th by-law was adopted.   And at a meeting of the stockholders holden on August 10, 1852, Dan Carpenter acted as the proxy of the defendant, as a stockholder, for two shares in the capital stock, under a written authority in his name, to appear, act and vote at such meeting.   The case finds, that the defendant, as a subscriber to the capital stock in the company, paid to the agent thereof, on Dec. 16, 1848, the first, second and third assessments on two shares of the stock amounting to $10, and on March 7, 1849, the fourth assessment on two shares amounting to $4, which assessments were made by the directors on August 16,

October 5, November 8, and December 9, 1848, respectively. Other assessments, with those paid, making fifty dollars on a share in all, were made subsequently, which have not been paid by the defendant, but they have been duly advertised as having been made, and the time and place of payment duly specified in the notices published.

At a meeting of the directors, held on Sept. 13, 1853, the treasurer was ordered, authorized and directed to sell all shares at auction of persons named in the list annexed to the order, who have neglected or refused to pay the assessments due thereon; and among several other names was that of the defendant for two shares. And on the same day, said shares were advertised to be sold, by the treasurer, on Oct. 22, 1853. And the same were sold accordingly to Dan Carpenter, for sums less than the amount of the unpaid assessments.

Delinquent subscribers or stockholders are held accountable to the corporation for the balance if his share or shares shall sell for less than the assessments due thereon, with the interest and costs of sale. Special Laws for 1846, c. 369, § 5.

The word "fill," in the defendant's subscription, imported a promise to pay assessments, and was sufficient for the maintenance of an action for the recovery of an unpaid balance, if on good consideration.

The contract was upon a good and sufficient consideration, and was binding upon the defendant. *Kennebec & Portland Railroad Co.* v. *Jarvis*, 34 Maine, 360; *Bangor Bridge Co. v. McMahon*, 1 Fairf. 478. And the plaintiffs are entitled in this action to the balance of the assessments after deducting the amount paid, unless some of the objections relied upon in defence, shall be found valid, which we will now consider.

The authority of Dan Carpenter to act under the defendant's proxy, at the meeting of the stockholders on Aug. 10, 1852, is full, and no specific defect is pointed out in argument. This must be treated as an admission, that he

was the holder of two shares of the capital stock, for which he had subscribed and paid assessments.

The witness Carpenter was not a stockholder at the time that he was allowed to testify for the plaintiffs, and on no principle was he incompetent.

Robie was a stockholder at the time he was admitted as a witness for the company. The testimony given by him, so far as it was in the least material, had reference only to his official acts, as treasurer ·of the corporation, and the evidence for that purpose was competent. 1 Greenl. Ev. § 416. Enough of contingency in the nature of the interest of the witness appeared to render him competent on other grounds. *Ib.*, note (1.)

The defendant's delay in making the advance payment of one dollar on each share, for which he subscribed, cannot relieve him, if otherwise liable. If the call for this payment was delayed by the corporation without taking advantage of his neglect, and the money was received, upon his voluntary offer, he cannot now avail himself of this objection as a defence to the present suit. And for the same reasons he cannot object effectually, that the treasurer did not give notice of the vote of the directors, that he be directed to collect one dollar per share, subscribed to the Y. & C. Railroad Co. stock, as provided in the 13th by-law.

The treasurer, who caused the defendant's two shares to be sold, stated that the same were sold to Dan Carpenter, with many others, all of which were transferred to him together, without specifying any particular two shares as belonging to him; and that the defendant's name is not entered on the stock ledger, and in the transfer book, and no shares were numbered as belonging to him. And it is insisted, that upon this ground, no valid sale of the defendant's shares were made, and consequently the basis for the maintenance of this action, for the balance of the amount of the assessments, fails.

The directors, at their meeting, Sept. 13, 1853, voted: " that whereas, the persons named in the following list,

holding the number of shares against their names respectively, have neglected, &c., the treasurer is hereby ordered, &c., to sell, &c., for the non-payment of assessments due thereon, as follows." Among several other names, is that of Charles W. Pratt, of Westbrook, two shares. The treasurer's advertisement purports to be in pursuance of the director's order, that he will sell the following shares of the capital stock, &c., for the payment of the assessments due thereon, and interest and costs of sale; which shares stand on the books of said company in the names of the following persons, to wit: — "Pratt, Charles W., of Westbrook, two shares," and other delinquents' names are on the list.

By the 13th by-law, after the order of sale by the directors, the treasurer is required to give notice of every such sale, in one or more public newspapers printed in Portland, at least thirty days before the day of such sale, designating the time and place thereof, and the shares to be sold. This by-law is silent touching the kind of designation of the shares to be sold. Any description sufficient to show clearly what shares were intended to be the subject of sale, is a compliance with the requirement in this rule. It does not appear that particular numbers had been assigned to the several stockholders, but it is manifest that the defendant had subscribed for two shares, had paid assessments thereon, and was recognized by the company as holding two shares of the capital stock, and was really the owner of the same, and subject to all the liabilities of a stockholder, under the contract to which he was a party, at the time of the sale.

The treasurer's notice of sale does not state the amount due on the assessments, upon any share, and hence it is urged, that the defendant had no opportunity of ascertaining the balance due, in order that he might make payment and prevent the sale. The treasurer was required by the 13th by-law to give notice of the amount per share of every such assessment, and of the time and place, when and where the same may be due and payable. It is admitted that this

was done, thereby giving the defendant the means of knowing with entire certainty the balance remaining unpaid.

It is again objected, to the validity of the sale, that it does not appear in the vote of the directors on Sept. 13, 1853, that any stockholder's share was advertised to be sold, but only the shares named in the following list. This objection fails upon the facts of the case. The treasurer's notice is, that the following shares of the *capital stock*, &c., will be sold for the payment of assessments due thereon, which shares stand on the books of the company, in the names of the following persons. If the defendant was represented to hold two shares of the capital stock, it is not difficult to perceive, that the notice treated him as a stockholder.

The person who obtained the defendant's subscription was the authorized agent of the company, which became a party to the contract, that has been ratified by the acts, making assessments, receiving payments thereof, making sale of the shares for the non-payment of other assessments, and the institution and prosecution of this suit.

There is no affirmative proof in the case that any particular number of shares were taken up before the final assessment of March 11, 1850, and hence it is insisted, that the assessments were unauthorized; and a distinction between the case at bar, and that of *K. & P. R. R. Co.* v. *Jarvis*, cited for the plaintiffs, is contended for.

In the case cited, the charter did not determine the number of shares, into which the capital stock should be divided. But by a by-law the stock was to consist of 12000 shares of $100, each, to be increased from time to time, as the directors should determine, and the Legislature should authorize, not to exceed 20,000 shares; and the by-laws authorized the directors from time to time to make such reasonable assessments on all the shares as they may deem necessary. The Court, in their opinion, holding the defendant in that case liable, say,— The contract in this case could not have had reference to any certain number of

shares, or certain amount of capital as fixed by the charter, and there is no language used in the contract prescribing the number of shares or the amount of the capital. The promise is not, to pay "all legal assessments." It is to pay for the shares as he should be required by a vote of the company, without any reference to assessments or payments to be made on other shares.

In the case before us, although by the additional Act of June 21, 1848, the capital stock was not to be less than 4000 shares, the precise number was not fixed in any mode by the company. By the contract, the defendant was bound to take and pay the assessments on two shares, on certain conditions, none of which required that the least number of shares, made necessary by the charter as the capital stock, had been taken. And the second condition of the contract is, that no shares shall be assessed more than $5 each, payable at one time, nor to a greater amount in all than $50. The liability was not predicated upon any implied condition, that the number of shares taken should be 4000. The cost of construction was necessarily uncertain, and if the shares are limited to 4000, and the amount of $50 on each should be paid, and expended without the completion of the road, the object of the charter would so far fail, unless the number of shares under contracts like the defendants should be increased.

Upon a proper construction of the contract, the principle of the case of *Kennebec & Portland Railroad Co.* v. *Jarvis*, is applicable, and the defendant is liable, notwithstanding 4000 shares have not been subscribed for.

*Defendant defaulted.*